FILED RECEIVED
LODGED
OCT 09 2026
AT BALTIMORE
CLERK U.S. DISTRICT COURT
DISTRICT OF MARYLAND
BY DEPUTY



1:26-mj-2730-CDA

# AFFIDAVIT IN SUPPORT OF A CRIMINAL COMPLAINT AND ARREST WARRANT

I, Benjamin Parker, a Special Agent Bomb Technician with the Bureau of Alcohol, Tobacco, Firearms, and Explosives (ATF) being duly sworn, do hereby depose and state that:

## I. PURPOSE OF THIS AFFIDAVIT

1. I submit this affidavit in support of an application for a Criminal Complaint alleging that **LEE SCOTT WYGAL RALSTON (RALSTON)** unlawfully received, possessed, or made a firearm in violation of 26 U.S.C. § 5861.

## II. AFFIANT'S BACKGROUND AND EXPERTISE

2. I am a Special Agent with the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF) and have been so since November 2015. Your affiant is an investigative law enforcement officer of the United States within the meaning of Section 2510(7) of Title 18 United States Code, and I am empowered by law to conduct investigations and to make arrests for the offenses enumerated in Section 2516 of Title 18 United States Code. Your affiant has received training and experience in interviewing and interrogation techniques, surveillance techniques, arrest procedures, search and seizure, and asset forfeiture. Your affiant also has specific and extensive additional training and experience with explosives and explosive investigations. Your affiant has also been involved in firearms, explosives, gangs, wire-taps, organized crime, and drug investigations.

3. Your affiant is presently assigned to Baltimore Group 1 of the Baltimore Field Division of the ATF. This group is responsible for Arson and Explosives investigations in Maryland and Delaware.

4. In the course of his training and experience, your affiant has become familiar with the methods and techniques associated with the manufacturing, distribution and possession of

destructive devices and explosives. In the course of conducting investigations, your affiant has been involved in the use of the following investigative techniques: interviewing informants and cooperating witnesses; conducting physical surveillance; consensual monitoring and recording of both telephonic and non-telephonic communications; analyzing caller identification system data; and executing search warrants that have led to substantial seizures of narcotics, firearms, explosives, and other contraband.

5. Through training and participation in investigations, as well through consultation with other agents and law enforcement personnel, I have become familiar with the manner and methods by which individuals manufacture, possess or use illegal destructive devices. Based on this training and experience, I have learned that:

a. It is common for manufacturers to maintain parts and pieces of devices in secure locations within residences, vehicles, businesses and other locations over which they maintain dominion and control, for ready access, and to conceal these items from law enforcement authorities.

b. It is common for device manufacturers, possessors or users to maintain additional destructive devices in secure locations within residences, vehicles, businesses and other locations over which they maintain dominion and control, for ready access, and to conceal these items from law enforcement authorities.

c. Device manufactures, possessors, or users may also keep records of their activities to ensure they receive payment for the devices or to show there testing and use to other interested parties. These records may be in written or electronic form. Device manufacturers, possessors or users may maintain books, records, receipts, notes, ledgers, money orders, bank records, money, safety deposit boxes and keys,

numerous business cards, photographs, address and telephone number books and papers, and other documentation relating to the transportation, ordering, sale and distribution of destructive devices, and contact information for associates and co-conspirators. This documentary evidence may include credit card and hotel receipts, plane and bus tickets and receipts, car rental receipts, accounts and records in fictitious names, false identification, money orders, cashier's checks relating to cash transactions and records indicating the existence of storage/manufacturing facilities used.

d. It also is common to maintain and store the aforementioned evidence of on electronic storage devices, including computers, mobile or cellular telephones, personal digital assistants (PDAs), handheld computers, MP3 players, digital hard drives, including, but not limited to iPods and external storage drives; and the media to store information, including diskettes, tapes or data storage devices. Additionally, destructive device manufacturers, possessors and/or users may have photographs or video tapes of themselves manufacturing, testing or using such devices, and such items are often kept in their residence.

e. It is common for individuals who manufacture, possess or use illegal destructive devices to maintain in their residence items of clothing worn during previous uses of said devices. Generally, it is uncommon for individuals to purchase clothing to wear to while using a device and discard that clothing immediately thereafter. Based upon the training and experience of your affiant and other members of law enforcement, illegal destructive device manufacturers, possessors and users generally wear clothing that is not different from their normal day-to-day clothing.

6. As a federal agent, I am authorized to investigate violations of laws of the United States, and as a law enforcement officer I am authorized to execute warrants issued under the authority of the United States.

7. Because this affidavit is being submitted for the limited purpose of establishing probable cause to arrest **RALSTON** for the alleged violations, I have not included every detail of every aspect of the investigation. Rather, I have set forth only those facts that I believe are necessary to establish probable cause. I have not, however, excluded any information known to me that would defeat a determination of probable cause. The information contained in this affidavit is based upon my personal knowledge, my review of documents, as well as conversations with other law enforcement officers and other individuals. All conversations and statements described in this affidavit are related in substance and in part unless otherwise indicated.

## III. PROBABLE CAUSE

8. On April 14, 2026, at or about 9:35 a.m., your affiant was contacted by Annapolis City Fire and Explosive Services Unit for a call that they were on assisting Maryland Natural Resources Police (NRP) with a search warrant at the address of 1203 Blackwalnut Lane, Annapolis, Maryland 21403. Your affiant responded to the address where an individual identified as Mr. Lee Scott Wygal RALSTON resided. NRP had conducted a search and seizure warrant and located what appeared to be explosive devices and suppressors in the garage of the residence.

9. Your affiant had an opportunity to examine the devices along with Annapolis City Hazardous Device Technicians and determined the devices appeared to be homemade and explosive in nature. Annapolis City performed X-rays of the devices and confirmed the presence of suspected explosive powder. Additionally, RALSTON was interviewed and confirmed that he

created the devices. The devices, while varying, had BB's in some of them, some were designed to be remote detonated, and others were designed to be initiated with a pyrotechnic fuse.

10. Investigators recovered a total of 32 suspected explosive devices that were manufactured by RALSTON, and those same 32 devices were in the possession of RALSTON within his garage. In addition to the explosive devices, investigators also recovered large vials of explosive powder, a large bag of suspected flash powder, a bottle of suspected homemade thermite, multiple homemade unserialized unregistered silencers, and multiple firearms.

11. Your affiant participated in the rendering safe and exploitation of the explosive devices. During the exploitation, your affiant confirmed the presence of explosive powder within all 32 devices. Your affiant, with the consultation of additional bomb technicians, selected eight of the devices to be exploited and sent same to the ATF National Laboratory for analysis. The eight devices were selected based upon X-ray images of all 32 devices due to their uniqueness. Your affiant believes the eight selected devices represent an example of each of the varying types of explosive devices recovered from RALSTON's residence. Of the eight devices, six used metal C02 containers with varying initiating systems and contents, one used a rubber glove container wrapped in clay, and one used a PVC pipe nipple container and was wrapped in clay. Of the 32 devices recovered from RALSTON, 28 were in metal C02 containers and four were wrapped in clay.

12. The ATF National Laboratory analyzed the eight selected explosive devices. The lab's analysis provided sizing, diameters, and weights of the containers, the types of fuses or initiating systems, and the types of explosive powders contained within each device. After the ATF National Laboratory conducted their analysis, the devices were sent to the Destructive Device Determination (D3) Unit at the National Center for Explosives Training and Research (NCETR)

in Huntsville, Alabama. The D3 Unit examined the eight devices and concluded that the six C02 container devices qualified as Destructive Devices under 18 U.S.C. § 921(a)(3)-(4) and 28 U.S.C. § 5845(a), (f).

## IV. CONCLUSION

13. Based on the foregoing information, I believe probable cause exists that on or about April 14, 2026, **LEE SCOTT WYGAL RALSTON** unlawfully received, possessed, or made a firearm and/or destructive device in violation of 26 U.S.C. § 5861.

14. Accordingly, based on the foregoing facts, I believe probable cause exists to support the issuance of a Criminal Complaint charging **LEE SCOTT WYGAL RALSTON** with unlawfully receiving, possessing, or making a firearm and/or destructive device in violation of 26 U.S.C. § 5861.

BENJAMIN PARKER Digitally signed by BENJAMIN PARKER
Date: 2026.10.04 20:32:43 -04'00'

Special Agent Benjamin Parker
Bureau of Alcohol, Tobacco, Firearms and Explosives

Affidavit submitted by email and attested to me as true and accurate by telephone consistent with Fed. R. Crim. P. 4.1 and 41(d)(3) this 8th day of October 2026.

Honorable Charles D. Austin
United States Magistrate Judge